WILLIAM JACKSON, Respondent, v. WILLIAM R. CUNNINGHAM, Appellant.

Kansas City Court of Appeals, December 24, 1887.

1. MORTGAGED CHATTELS—RESPECTIVE RIGHTS OF MORTGAGEOR AND MORTGAGEE.—In this state, upon the breach of the condition of a chattel mortgage, the mortgagee has the absolute title to the property, subject to the right of the mortgageor to redeem in equity. The mortgagee, upon such breach, becomes entitled to the possession of the property, and may maintain replevin for it against the mortgageor himself.

2. —— —— PAYMENT HAS EFFECT, IF ACCEPTED, OF WAIVING FORFEITURE.—A mortgageor may, by payment of the mortgage debt, be revested with the legal title to the property, on the ground that, by accepting such payment, the mortgagee waives the forfeiture. For the same reason, payment of the debt after forfeiture and possession taken by the mortgagee, has the same effect. But a mere tender of the debt will not have this effect; nothing short of the acceptance of the tender will have such effect. The legal title remains in the mortgagee notwithstanding the tender.

3. —— —— REMEDY OF MORTGAGEOR, AFTER FORFEITURE, IN EQUITY ONLY.—Where the mortgagee stands on the forfeiture, and refuses to accept payment of the debt, the mortgageor can only enforce his right to redeem by a bill in equity for that purpose. He cannot enforce such right in any proceeding in a court of law.

APPEAL from Lafayette Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action of replevin begun before a justice of the peace for the recovery of the possession of two horses. The defendant claimed the property under a mortgage with a power of sale, in the usual form, executed by the plaintiff to secure the payment of a promissory note made by the plaintiff, pay-

able to the order of James Bumgarner, and assigned by said payee to the defendant. From a judgment by the justice of the peace in favor of plaintiff, the defendant appealed to the circuit court. The plaintiff admitted the execution of the note and mortgage, and the assignment to the defendant. The defendant took possession of the property under the mortgage after an alleged forfeiture. Against the right of the defendant to the property under said mortgage the plaintiff made two claims. The first claim was, that the plaintiff, in pursuance of an agreement between him and the defendant, at the time of the assignment of the note to the latter, had paid the note in full with corn before the defendant took possession of the property. The second claim originated out of this state of facts: On the day that the defendant took possession of the property, he also instituted a suit before a justice of the peace on an account made up of several small sums of money paid by the defendant for the plaintiff, and a certain sum alleged to be due defendant on a settlement of June, 1886. The total amount of the account was $40.52, and this was reduced, by a credit given therein, to the balance claimed, $33.77. To said account the plaintiff filed a setoff in the shape of an account, the various items of which amounted to $163.80, which amount was reduced by various credits stated in the said account to the balance claimed, $39.40. One of the credits was as follows: "By cash paid J. H. Bumgarner, $35.00." On a trial of said suit the defendant in this case, the plaintiff in that suit, disclaimed the credit just mentioned. That suit resulted in a judgment in favor of the plaintiff therein, the verdict being as follows:

"We the undersigned jury find the difference for the plaintiff eleven dollars, 82 cents ($11.82).

"B. F. THAYER, Foreman."

From that judgment no appeal was taken, and the defendant therein, who is the plaintiff here, paid it in full before beginning this action. Upon such facts is based the plaintiff's second claim, to which reference

has been made, viz., "a former adjudication of the amount and indebtedness and interest specified in said note, and a full settlement of the same in a former suit between plaintiff and defendant."

From a judgment against him the defendant has appealed to this court.

WALLACE & CHILES, for the appellant.

I. The court below erred in permitting plaintiff to read in evidence to the jury the docket entries and papers in the suit of W. R. Cunningham against William Jackson, tried before J. J. Browning, justice of the peace, August 20, 1886, including the account sued on by plaintiff therein, and offset and counter-claim of defendant therein, verdict and judgment, against the objection of defendant that the same were irrelevant, incompetent, and immaterial. There is nothing in such docket entries and papers that show, even *prima facie*, that the right of defendant to the possession of the horse and mare sued for in this case, was involved in the issues, or was passed upon or adjudicated in such former suit. And the court below manifestly erred in refusing to permit witness, Asa Tracy, who was a juror on the trial of said action of W. R. Cunningham against William Jackson before justice Browning, August 20, 1886, to answer the question propounded to him by defendant. Parol evidence may be received for the purpose of showing whether a question was determined in a former suit. *Lightfoot v. Wilmot*, 23 Mo. App. 5; *Hickerson v. City of Mexico*, 58 Mo. 61; Freeman on Judgments [2 Ed.] sect. 273; *Smith v. Talbot*, 11 Ark. 666; *Bell v. Hoagland*, 15 Mo. 360. *Res adjudicata* only applies to that which was directly in issue. *Ridgely v. Stillwell*, 27 Mo. 132. And which was material and traversable. Greenl. Evid. [4 Ed.] sect. 528. "Not to any matter to be inferred by argument from the judgment." Greenl. Evid., *supra;* *Clemens v. Murphy*, 40 Mo. 121, 128; *Wright v. Salisbury*, 46 Mo. 26. The court in former suit must have had jurisdiction. *Wright*

*v. Salisbury*, 46 Mo. 29 ; *Wells v. Moore*, 49 Mo. 229 ; *Spradling v. Conway*, 51 Mo. 51, 54 ; *Burnes v. Railroad*, 71 Mo. 163 ; *Miles v. Walther*, 3 Mo. App. 96. *Res adjudicata* does not apply, unless parties to former suits were adversary parties. The item, "By cash paid J. H. Bumgarner, $35," was a credit given by defendant, Wm. Jackson, in his offset in that suit, not claimed, but "disclaimed" by Cunningham. *McMahan v. Geiger*, 73 Mo. 145, 149 ; *Packet Co. v. Sickle*, 24 How. [U. S.] 333 ; *Dana v. Tucker*, 4 Johns. 477, 480 ; *State v. Baker*, 20 Mo. 338 ; *State v. Brewer*, 8 Mo. 373–4 ; *Wood v. Jackson*, 8 Wend. 36 ; *Lawrence v. Hunt*, 10 Wend. 85, 86 ; *Packet Co. v. Sickles*, 5 Wall, 580, 587, 598, 599.

II.   The court below erred in giving to the jury the instructions numbered one, two, three, four, and five on the part of the plaintiff. (1) There was no evidence to warrant said first instruction. Defendant had possession of said horses under the chattel mortgage executed by plaintiff, Jackson, after default in the payment of the debt. (2) There was no evidence to warrant said second instruction. There is no evidence that "said note" had been paid in corn, or that the amount of "said note" was passed upon and adjudicated in the suit of W. R. Cunningham against William Jackson, tried by said Browning, justice of the peace. "Said note" was not named or mentioned either in the account, setoff, or evidence in said suit. The "amount" due on the note, secured by the chattel mortgage, at the time of the trial before said justice, was over forty dollars, so the item, "By cash paid J. H. Bumgarner, $35," did not represent "said note," or the "amount" thereof ; and plaintiff offered no evidence in this case to show that said thirty-five dollar item, represented either "said note" or the "amount" thereof ; and such instruction is also in the alternative, and inconsistent with itself. (3) There was no evidence to warrant said third instruction. There was no evidence, on the trial of this cause, that plaintiff, in his "offset," in such former suit, gave defendant "credit for the amount of said note

and interest then due" thereon. And there was no evidence, on this trial, that "evidence was offered or heard before said justice," in relation to the item of thirty-five dollars, as the "value of said note." And there was no evidence on the trial of this cause that the jury before said justice "returned a verdict in favor of the defendant herein, for the sum of eleven and $\frac{82}{100}$ dollars, the difference between plaintiff and defendant, including all said items." (4) There was no evidence to warrant said fourth instruction, in this, that there was no evidence on the trial of this cause, "that one of the items of the plaintiff's said setoff was the 'Bumgarner note,'" nor any evidence that the "thirty-five dollar item in said setoff," "represented" the "Bumgarner note." (5) Said fifth instruction of plaintiff's is erroneous, in selecting out and calling the attention of the jury to part of the evidence in this cause, to-wit, the "docket entries" of said justice, Browning; and the "pleadings and papers filed in such suit" before him, including the "verdict of the jury and judgment thereon," and telling the jury that they are "evidence in this cause." And besides, there was no evidence to warrant said fifth instruction, in this, that there was no evidence on this trial, that "plaintiff in his offset filed before said justice gave the defendant herein credit for the amount of said note and interest due at the time." And said fifth instruction is erroneous in telling the jury that the "burden of proof is upon the defendant in this suit to show by a preponderance of the evidence that said item relating to or representing said note was not considered and passed on by the jury." By the authorities, the burden of proof was on plaintiff to show that such item was passed on, and also that it related to and represented "said note," which he did not do. (6) And the instructions of plaintiff are inconsistent with, and contradictory of, those given for defendant, and misleading to the jury. *Doty v. Steinberg*, 25 Mo. App. 328; *State v. Clevenger*, 25 Mo. App. 653.

III.   The court below erred in refusing instruction numbered four, asked for by defendant, for the reasons and on the authorities cited in point I. of this brief. Also in refusing instruction numbered six, asked for by defendant.   The evidence failed to show that the right of defendant to the possession of the horse and mare was involved in, or passed on, or adjudicated in the former suit before justice Browning.

IV.   The court below erred in overruling the motion of defendant for a new trial.   The verdict of the jury is contrary to and against the evidence, and against the law of the case, as given by the court to defendant. *Hewett v. Doherty*, 25 Mo. App. 326; *Doty v. Steinberg*, *supra*.

I. W. WHITSETT and JOHN S. BLACKWELL, for the respondent.

I.   In the setoff of this plaintiff, in the suit of W. R. Cunningham against William Jackson (this plaintiff), tried before J. J. Browning, a justice of the peace, August 20, 1886, the issues in said trial being made up and joined on the account of said Cunningham, and the setoff of this plaintiff filed in said cause, and in the said setoff of this plaintiff, the item, "By cash paid J. H. Bumgarner, $35," being named and the said Cunningham given credit therefor, and there being no motion to strike said item from said setoff and verdict, and judgment having been rendered in said cause, on the issues joined as aforesaid, and no appeal taken therefrom, the court, therefore, committed no error in admitting the docket and docket entries and papers in the said cause of W. R. Cunningham against William Jackson (this plaintiff), tried before said justice J. J. Browning, to go before the jury as evidence to show a former adjudication of said "Bumgarner note."   Said docket entries, account, setoff, and verdict not only make out a *prima-facie* case, but conclusively show that the "Bumgarner note," upon which the defendant in this suit claims to hold the property in controversy, was litigated, passed

upon, and adjudicated in said former suit of W. R. Cunningham against this plaintiff before said justice. *Greenbaum v. Elliott, Adm'r,* 60 Mo. 25; *Transportation Co. v. Traube,* 59 Mo. 355; *Harvie v. Turner,* 46 Mo. 444; *Wood v. Ensel,* 63 Mo. 193; *Armstrong v. City of St. Louis,* 3 Mo. App. 100, 103; *Railroad v. Levy,* 17 Mo. App. 501.

II.    Respondent admits and concedes the law to be, that competent parol evidence may be received for the purpose of showing whether a question was determined in a former suit; and respondent further admits that defendant, in the trial of this cause, might have introduced competent parol evidence, if he had any such evidence, to show that said "Bumgarner note" was not considered, passed upon, or adjudicated in said former suit between plaintiff and defendant before said justice. But we contend that a juror, one who tried the cause and joined in the verdict, is incompetent as a witness to impeach his verdict, or state, as a witness, how, or by what means, the jury reached a verdict, or what items or things were considered in arriving at a verdict. *McFarland v. Bellows,* 40 Mo. 311; *Ellison v. Weathers,* 78 Mo. 115.

III.    There were mutual accounts of the same kind and character existing between plaintiff and defendant. The difference between the parties might be settled and adjudicated in one suit.    *Shaw v. Skelle,* 31 Mo. 216; Rev. Stat., secs. 2916, 2917, 2919.

IV.    The case of *Wright v. Salisbury* (46 Mo. 26) has no application to this, except in some particulars, as authority for plaintiff.    Nor does the case of *McMahan v. Geiger* (73 Mo. 145) have any application.    If Cunningham and Jackson, the first suing on an open account, and the latter pleading and standing on a setoff in a justice's court, and both appearing in person and by attorneys and with witnesses, and prosecuting their respective demands and offsets, did not place said Cunningham and Jackson in the position of "adversary

parties," then we submit that it would be difficult to get parties in such position.

V. By the pleadings, evidence, and instructions in this case two distinct questions and points were made and raised in regard to the indebtedness evidenced by the " Bumgarner note and mortgage," to-wit, payment in full of said note in corn sold and delivered to Cunningham by Jackson, and second, *res adjudicata*, and we submit that, on the evidence and instructions, the judgment should be affirmed, even though the question of former adjudication be not considered.

VI. The court committed no error in giving instructions on the part of plaintiff, and we submit that defendant in this cause had no grounds of complaint on the score of instructions. Defendant asked and received instructions on every conceivable phase of the case, and if any error was committed, such error was in favor of the defendant, and he can't complain.

VII. This cause having been twice tried, first, in the immediate neighborhood of the residents of the parties, and second, in the circuit court of this county, on well-defined issues joined in both courts, and upon full and proper declarations of the law in the latter court, and judgment being in favor of plaintiff in both said trials, we submit that the same should be affirmed.

HALL, J.—No question arising out of the first claim made by plaintiff that he had paid the note in suit before defendant took possession of the mortgaged property is made here. It is clear that if such payment was made, even after forfeiture, it would have revested the legal title to the property in the mortgageor, without a re-delivery or re-sale, and without a cancellation of the mortgage. Jones on Chat. Mort., sects. 632 and 633, and cases cited.

The questions presented grow out of the action of the court with reference to the second claim made by plaintiff. Those questions must be decided in the light of the following rules of law concerning the respective rights of

mortgageor and mortgagee in respect of mortgaged chattels. In this state, upon a breach of the condition of a chattel mortgage, the mortgagee has the absolute title to the property, subject to the right of the mortgageor to redeem in equity. The mortgagee, upon such breach, becomes entitled to the possession of the property and may maintain replevin for it, against the mortgageor himself. The right of the mortgageor to redeem is an equitable right, not a legal right, and can be enforced only in equity. While a mortgageor may, by payment of the mortgage debt, be revested with the legal title to the property, this is so on the ground that, by accepting such payment, the mortgagee waives such forfeiture. For the same reason payment of the debt after forfeiture and possession taken by the mortgagee has the same effect. But after forfeiture and possession taken by the mortgagee a tender of the debt does not revest the title in the mortgageor. "Nothing short of acceptance of the tender will have that effect and extinguish the legal title of the mortgagee in the property mortgaged." Jones on Chat. Mort., sec. 632. The legal title remains in the mortgagee notwithstanding the tender. The tender will not enable the mortgageor to maintain replevin for the property. Jones on Chat. Mort., sec. 634. The mortgageor, where the mortgagee stands on the forfeiture and refuses to accept payment of the debt, can only enforce his right to redeem by a bill in equity for that purpose. He cannot enforce such right in any proceeding in a court of law. He may tender the mortgage debt in any manner he may choose, by giving the mortgagee credit on an account held by him against the latter, whether in suit or not, if he sees fit to do so, and if the mortgagee accepts the tender thus made the forfeiture is thereby waived and the mortgageor becomes revested with the legal title to the property; but the mortgagee cannot be forced to accept the tender in any court of law in any proceeding; that can be done, as just said, only by a bill in equity. A mortgageor cannot, by a tender in a suit of replevin for the prop-

erty after forfeiture and possession by mortgagee, force the latter to accept payment of the debt; in other words, the mortgageor cannot redeem in a suit of that kind; neither can the mortgageor force the mortgagee to receive payment of the debt by credit or otherwise in any suit at law, and then maintain replevin for the property. What the mortgageor cannot do in one suit at law he cannot accomplish in two such suits. To hold otherwise would be to encourage circuity of action, in favor of which surely there cannot be invoked the principle, " that current accounts and mutual demands, of a like nature, as far as they go, should compensate and extinguish each other, and that the balance only constitutes a real debt between the parties." That principle can have no application to a case where a mortgagee, after forfeiture, has taken possession of mortgaged chattels, because, in such case, the mortgagee has thereby acquired rights which the mortgageor can discharge by only one proceeding. The mortgageor in that proceeding only has the right to pay the mortgage debt against the will of the mortgagee; and the mortgagee can be prevented only by a court of equity from subjecting the property to the payment of the debt.

The mortgageor by giving the credit, to which reference has been made, in his account filed as a setoff in the suit brought against him by the mortgagee, simply made a tender to the amount of the credit. Had the mortgagee accepted the tender thus made, after judgment in that suit, the credit would have been a payment of the mortgage debt in full, or *pro tanto*, according as the credit was equal to or less than the mortgage debt at the time of the credit, and would have had the full force and effect of such a payment. The credit would have been a payment after judgment because of the acceptance of it by the mortgagee, not because it was tendered by the mortgageor and was allowed by the court. But if, as all the evidence showed, the mortgagee disclaimed and refused the credit, then the allowance of it by the court, at the instance and request of the mort-

gageor, was without authority, beyond the power and jurisdiction of the court, and of no force and effect as against the mortgagee. The credit in such case was allowed at the instance of the mortgageor and at his risk, and if he has suffered from it he alone is to blame.

If the mortgagee had not made *disclaimer* of the credit, and the court had allowed it without objection from the mortgagee, we think that the acceptance of the credit by him should have been presumed from such course on his part. On account of the views expressed by us and the uncontroverted fact of the mortgagee's disclaimer of the credit referred to, we have not deemed it necessary to determine many of the questions raised in the record.

The court below tried the case contrary to these views, and, therefore, the judgment is reversed and the cause remanded, to be proceeded with in accordance therewith. All concur.